[Cite as *State v. Martucci*, 2018-Ohio-3471.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 28888 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOSHUA MARTUCCI | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2016-08-2899 |

DECISION AND JOURNAL ENTRY

Dated: August 29, 2018

TEODOSIO, Presiding Judge.

{¶1} Defendant-Appellant, Joshua Martucci, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms in part and reverses in part.

I.

{¶2} In 2013, allegations arose that Mr. Martucci had sexually abused J.S.-S. and A.S., two young girls whose mother was friends with Mr. Martucci's sister. The incidents were said to have occurred in the past when the girls were younger and had spent time at the home(s) of Mr. Martucci's mother, with whom Mr. Martucci resided at the time. Though the allegations triggered an investigation, charges were never filed. The case was ultimately closed because J.S.-S. and A.S. were unwilling to take part in the investigation.

{¶3} A few years later, additional allegations of sexual abuse arose, this time concerning Mr. Martucci's two nieces, A.M. and C.M. The two girls also indicated that Mr. Martucci had abused them in the past when they spent time at their maternal grandmother's

home(s). Following their disclosure, another investigation ensued, the girls were interviewed, and the police met with Mr. Martucci to take his statement. Mr. Martucci was then arrested in connection with all of the foregoing allegations.

{¶4} A grand jury indicted Mr. Martucci on twelve counts of rape and eleven counts of gross sexual imposition ("GSI"). The State later dismissed six of his twenty-three counts. The remaining seventeen counts pertained to the four girls and several distinct time periods, spanning from 2004 to 2010. Specifically, Mr. Martucci was charged with committing: (1) four counts of rape and two counts of GSI against J.S.-S. when she was between the ages of seven and thirteen; (2) three counts of rape and three counts of GSI against A.S. when she was between the ages of six and nine; (3) one count of rape and two counts of GSI against A.M. when she was between the ages of seven and twelve; and (4) two counts of GSI against C.M. when she was between the ages of five and six.

{¶5} Mr. Martucci filed a motion to suppress statements he made to a detective on two separate occasions in 2013, and the court scheduled the matter for a hearing. The only contested suppression issue was whether Mr. Martucci had been subjected to custodial interrogation. Rather than present any witnesses at the scheduled hearing, the State provided the court with a DVD recording of Mr. Martucci's second interview and a transcript of the same. The parties agreed that the court could rely on that evidence to resolve Mr. Martucci's motion or, if necessary, inform the parties that it required additional evidence. The court took the matter under advisement and later denied the motion to suppress.

{¶6} Mr. Martucci waived his right to a jury trial, and his seventeen counts were tried to the bench. At the conclusion of its case, the State moved to amend the indictment as to one of the victims so as to expand the time period alleged in the indictment by one year. Mr. Martucci

objected to the amendment, but the court allowed it. The court found him not guilty on four counts, guilty of attempted rape on one rape count, and guilty of his remaining counts. As to two of the rape counts of which the court found Mr. Martucci guilty, the court did not find that he employed force when committing those offenses. The court ultimately sentenced him to a total of forty years to life in prison.

{¶7} Mr. Martucci now appeals from his convictions and raises six assignments of error for our review. For ease of analysis, we rearrange and consolidate several of the assignments of error.

II.

**ASSIGNMENT OF ERROR FOUR**

THE TRIAL COURT ERRED IN NOT SUPPRESSING THE ORAL STATEMENTS APPELLANT MADE TO THE DETECTIVE WHEN, UNDER THE TOTALITY OF THE CIRCUMSTANCES, HE WAS SUBJECT TO CUSTODIAL INTERROGATION AND THE INTERROGATING LAW ENFORCEMENT OFFICER FAILED TO GIVE APPELLANT THE WARNINGS REQUIRED BY MIRANDA V. ARIZONA (1966), 384 U.S. 436, THEREFORE VIOLATING APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶8} In his fourth assignment of error, Mr. Martucci argues that the court erred by denying his motion to suppress. Because he was subjected to custodial interrogation and not Mirandized, he argues, the court ought to have suppressed his statements and all of the evidence flowing therefrom. Upon review, we are unable to address the merits of Mr. Martucci's argument.

{¶9} A motion to suppress presents a mixed question of law and fact:

When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.

Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

*State v. Oberholtz*, 9th Dist. Summit No. 27972, 2016-Ohio-8506, ¶ 5, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When [a] trial court fails to make adequate factual findings, this Court cannot determine the extent to which the facts in the record were considered by the trial court." *State v. Purefoy*, 9th Dist. Summit No. 27992, 2017-Ohio-79, ¶ 18. In those instances, this Court has reversed the trial court's suppression ruling and remanded the matter for the court to make factual findings in the first instance. *See id. Accord State v. Soto*, 9th Dist. Lorain No. 16CA011024, 2017-Ohio-4348, ¶ 17-18.

{¶10} Whether a suspect has been subjected to custodial interrogation for purposes of the Fifth Amendment and *Miranda* is a fact-intensive inquiry. *See State v. Lerch*, 9th Dist. Summit No. 26684, 2013-Ohio-5305, ¶ 8. *Accord State v. Butler*, 9th Dist. Summit No. 23786, 2008-Ohio-781, ¶ 27, quoting *State v. Dunn*, 9th Dist. Lorain No. 04CA008549, 2005-Ohio-1270, ¶ 24. Yet, the record reflects that the trial court failed to make any factual findings when ruling on Mr. Martucci's motion to suppress. At the start of the trial, the court orally announced that it had reviewed the motion, the relevant law, and the evidence presented and, "based on all of that, [it was] going to deny [the] motion to suppress." It did not include any factual findings in its oral pronouncement. Likewise, in its journal entry denying the motion to suppress, it failed to include any factual findings. The court simply indicated in a one-line statement that the motion was denied.

{¶11} As noted, in reviewing a trial court's suppression ruling, this Court must accept the trial court's factual findings if they are supported by competent, credible evidence. *Burnside* at ¶ 8. An absence of factual findings impedes our ability to review a suppression ruling because

it prevents us from determining "the extent to which the facts in the record were considered by the trial court." *Purefoy* at ¶ 18. "Given that the trial court [here] failed to make findings of fact, we must conclude that [it] erred by denying the motion to suppress for that reason." *Id.* As such, Mr. Martucci's assignment of error is sustained solely to the extent that the court failed to make factual findings. The matter is remanded "for the trial court to make factual findings and then address the motion to suppress in the first instance. This Court takes no position on the legal arguments raised by [Mr. Martucci] in challenging his motion to suppress." *Id.* For the foregoing reasons, Mr. Martucci's fourth assignment of error is sustained.

## ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD THAT THERE WAS SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION.

{¶12} In his second assignment of error, Mr. Martucci argues that his convictions are based on insufficient evidence. We disagree.

{¶13} While our resolution of Mr. Martucci's fourth assignment of error mandates reversal, we are compelled to address his sufficiency challenge due to his constitutional protection against double jeopardy. *See State v. Lindow*, 9th Dist. Summit No. 27417, 2016-Ohio-913, ¶ 15, citing *State v. Lovejoy*, 79 Ohio St.3d 440, 449-450 (1997). We note that, in addressing his sufficiency challenge, we consider the entirety of the State's evidence, including the statements that were the subject of Mr. Martucci's motion to suppress. The Ohio Supreme Court has held "that the interest in the administration of justice dictates that [an] appellate court review the issue of sufficiency in consideration of all evidence presented by the State in its case in chief, whether such evidence was properly admitted or not." *State v. Dixon*, 9th Dist. Medina

Nos. 11CA0065-M, 11CA0087-M, 2012-Ohio-4428, ¶ 18, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 19.

{¶14} "A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo." *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, ¶ 6, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In analyzing the sufficiency of the State's evidence, this Court does not "resolve evidentiary conflicts or assess the credibility of witnesses[] because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶15} An offender commits rape if he "engage[s] in sexual conduct with another * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b). Relevant to this appeal, an offender commits GSI if: (1) he has "sexual contact with another" or "cause[s] another * * * to have sexual contact with [him]"; and (2) "[t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.05(A)(4).

> "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A). Meanwhile, "'sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶16} "[P]recise times and dates are not ordinarily essential elements of an offense * * *." *State v. Ritchie*, 9th Dist. Lorain No. 95CA006211, 1997 Ohio App. LEXIS 1277, *6 (Apr. 2, 1997).

> "It is well established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity." *State v. Daniel*, 97 Ohio App.3d 548, 557 (10th Dist.1994). "In many cases involving child sexual abuse, the victims are children of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time." *State v. Mundy*, 99 Ohio App.3d 275, 296 (2d Dist.1994).

*State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 9. "[I]n sex offense cases, * * * the testimony of the victim, if believed, is sufficient to support a conviction, even without further corroboration." *State v. Melendez*, 9th Dist. Lorain No. 08CA009477, 2009-Ohio-4425, ¶ 15, quoting *State v. Willard*, 9th Dist. Medina No. 05CA0096-M, 2006-Ohio-5071, ¶ 11.

{¶17} Mr. Martucci argues that his convictions are based on insufficient evidence because there was no physical evidence linking him to his crimes. He further argues that the testimony failed to establish the location where the incidents occurred, as there was evidence that his mother (with whom he resided at the time) moved several times. Finally, he argues that the State failed to present sufficient evidence because the victims contradicted themselves and each other on certain points, as well as the timeline provided by his sister.

{¶18} Sarah M. is Mr. Martucci's older sister and the mother of A.M. and C.M., two of the victims in this matter. Because Mr. Martucci is twelve years younger than Sarah M., he

continued to reside with their mother long after she (Sarah M.) had left home. She testified, however, that her daughters frequently spent time at her mother's home, where Mr. Martucci also lived, from the time they were toddlers. Additionally, their friends, J.S.-S. and A.S., spent a lot of time there. Sarah M. explained that J.S.-S. and A.S. and her own girls were raised like cousins because they were close in age and J.S.-S. and A.S. were the daughters of her best friend. Multiple witnesses testified that Mr. Martucci's mother treated all four of the girls like grandchildren even though only two of them (A.M. and C.M.) actually were.

{¶19} There was testimony that, in 2013, A.S. told her school guidance counselor that Mr. Martucci had sexually abused her and, in turn, the guidance counselor reported the abuse to the police. Retired Officer Sherri Robinson interviewed Mr. Martucci on two separate occasions that year to discuss the allegations. The first interview occurred at his apartment, and the second occurred five days later when he came to the police station. Officer Robinson testified that, during their first interview, Mr. Martucci admitted that he and J.S.-S. had performed oral sex on one another "less than ten times in his bedroom or in the bathroom" when he lived with his mother in Green and in Akron. He claimed that he could not recall engaging in any inappropriate behavior with A.S., but said, "if she said [he] did something, then [he] must have * * *."

{¶20} Officer Robinson recorded her second interview with Mr. Martucci, and the State played the recording at trial. During that interview, Mr. Martucci stated that J.S.-S. had performed oral sex on him on multiple occasions, estimating that it occurred less than fifty times when she was between the ages of eight and twelve. As to A.S., he once again stated that he did not recall engaging in any inappropriate behavior with her.

{¶21} With respect to J.S.-S., Mr. Martucci was convicted of four counts of rape and one count of GSI. The four rape counts pertained to the following periods of time: (1) the years when J.S.-S. was between the ages of seven and nine; (2) the year she was ten; (3) the year she was eleven; and (4) the year she was twelve. The single GSI count pertained to the years when she was between the ages of seven and thirteen.

{¶22} J.S.-S. was nineteen years old at the time of trial. She testified that she often spent time at the home of Mr. Martucci's mother when she was between the ages of five and thirteen due to the friendship between her mother and Sarah M., Mr. Martucci's sister. She indicated that Mr. Martucci's mother moved several times over the years, but Mr. Martucci always lived with her and generally had his own bedroom. She recalled that one of his bedrooms had a bunk bed and another had a bed with a dresser and a small television. J.S.-S. was six years younger than Mr. Martucci, and she often spent time alone with him in his bedroom when he was left in charge or his mother was sleeping. She stated that, during those times, Mr. Martucci would sexually abuse her.

{¶23} J.S.-S. testified that Mr. Martucci began sexually abusing her when she was five years old and continued to do so until she was twelve years old. She indicated that he asked her to perform fellatio and she would do so "just about any time [she] was over there" from the ages of five until the age of twelve. Additionally, she stated that Mr. Martucci would touch her breasts and vagina with his hands and penis "[j]ust about every time [she] was over there" during that time period. She indicated that Mr. Martucci sometimes threatened her, but other times he made her exchange sexual favors for treats such as food or ice cream. She also indicated that his abuse escalated with time. She testified that Mr. Martucci began inserting his penis into her vagina and, on at least one occasion, tied her hands behind her back with a jump rope and

inserted his penis into her anus. J.S.-S. recalled that it was very difficult to use the restroom after that assault. She testified that the abuse ended when her parents separated and she stopped going to visit Mr. Martucci's mother.

{¶24} With respect to A.S., Mr. Martucci was convicted of one count of rape, one count of attempted rape, and one count of GSI. The rape count pertained to the years when she was between the ages of six and seven, and the attempted rape count pertained to the years when she was between the ages of eight and nine. Finally, the GSI count pertained to the years when she was between the ages of six and nine.

{¶25} A.S. was seventeen years old at the time of trial. She testified that, growing up, she was very close with her half-sister, J.S.-S., as well as A.M. and C.M. When she was about six or seven years old, A.S. began spending time at Mr. Martucci's mother's home. She recalled that she visited there on either a weekly or bi-monthly basis and the other girls were always there when she visited. She remembered that Mr. Martucci's mother lived in two separate homes over the years, but that Mr. Martucci always lived with her.

{¶26} A.S. testified that Mr. Martucci was always nice to her and the other girls when she visited. For instance, he would give them butterscotch candies, take them for walks, and encourage them to spend time with him in his room. She stated that, when she spent time in his room, they would always end up lying on his bed and Mr. Martucci would remove his penis from his pants and ask her to rub it. According to A.S., Mr. Martucci would have her rub his penis "almost every single time [she] went over there." Additionally, he would put his hand in her pants, touch her vagina, and put his finger inside her vagina. A.S. indicated that it hurt when Mr. Martucci inserted his finger into her vagina, but she never said anything because "[h]e acted like it was an okay thing to do and [she] just thought it was normal." She testified that the abuse

continued each year until she was nine years old and she stopped visiting Mr. Martucci's mother's home.

{¶27} With respect to A.M., Mr. Martucci was convicted of one count of rape and two counts of GSI. The rape count pertained to the years when A.M. was between the ages of seven and ten. The GSI counts pertained to the years when she was between the ages of seven and twelve.

{¶28} A.M. was twenty years old at the time of trial. She identified Mr. Martucci as her uncle and indicated that, in her youth, she frequently spent time at her grandmother's house where Mr. Martucci resided. She recalled that Mr. Martucci had a bunk bed and his own room at her grandmother's home in Green, but later slept on a couch or futon in her grandmother's work room when they moved. The earliest she could recall staying at her grandmother's home was when she was about four years old, and she testified that she stopped visiting when she was about thirteen years old. During those years, Mr. Martucci lived with her grandmother.

{¶29} A.M. testified that, when she was between the ages of four and twelve, Mr. Martucci sexually abused her. She recalled that she was given the top bunk in his room when she spent the night at her grandmother's. According to A.M., Mr. Martucci would wait for his mother to go to sleep before signaling for her (A.M.) to climb down. She testified that Mr. Martucci would remove her clothes or have her remove them and that he would touch her breasts and her vagina with his hands and mouth. Additionally, he would have her touch his penis with her hands and mouth. She recalled that Mr. Martucci put his mouth on her vagina several times when she was about eight or nine years old. She believed that she touched his penis with her mouth on two occasions, once inserting it into her mouth, but could not remember how old she was when that occurred. A.M. stated that the most common thing Mr. Martucci would do was

touch her breasts or have her sit on top of him and "essentially grind on him." She testified that the sexual abuse tapered off when she was about ten years old, but that she recalled at least one later incident. Specifically, when she was twelve, Mr. Martucci fondled her breasts because he wanted to touch them once she had entered puberty.

{¶30} With respect to C.M., Mr. Martucci was convicted of two counts of GSI with those counts pertaining to the years when she was between the ages of five and six. C.M. was fifteen years old at the time of trial. Though she was sure that Mr. Martucci had engaged in inappropriate behavior with her, she indicated that she had difficulty recalling the details surrounding his abuse. She could only recall that he would squeeze her upper thighs and touch her breasts when she was "[p]robably * * * five to six [years old]." She estimated that the incidents happened once to twice a week for about two years when she spent time at her grandmother's house.

{¶31} Detective Ann Manuel began investigating Mr. Martucci in 2016 after his sister reported that he had molested her daughters. She reviewed the materials from the 2013 investigation, spoke with three of the girls, and later interviewed Mr. Martucci. Additionally, as part of her investigation, she asked A.M. to place a recorded, one-party consent call to Mr. Martucci. A.M. agreed to do so, and the State played the recording at trial.

{¶32} During her phone call with Mr. Martucci, A.M. repeatedly asked him to admit that he had sexually abused her, her sister, J.S.-S., and A.S. Mr. Martucci refused to confess to A.M. about any details of the sexual abuse that occurred, but repeatedly admitted that he had "messed up" with her, C.M., and J.S.-S. He told A.M. that he did not want to say what he had done because it was shameful, made him uncomfortable, and he had already sought counseling to address his behavior. He admitted that he had "crossed the line" and had given into urges

because "[he] was sick" at the time. When A.M. specifically listed all the things that Mr. Martucci had done to her, he said he "kn[e]w [he] did wrong."

{¶33} At trial, the State also introduced a recording of the interview that Mr. Martucci had with Detective Manuel in 2016. During his interview, Mr. Martucci admitted that he had engaged in inappropriate touching and other sexual conduct with A.M., C.M., and J.S.-S. when they were between the ages of five and twelve. He admitted that he had used his hands to touch their legs, chests, butts, and vaginas and had used his penis to touch their vaginal areas. He also admitted that he had J.S.-S. and A.M. perform fellatio on him and touch his penis with their hands. When asked, he agreed that he "probably did" perform oral sex on J.S.-S. on at least one occasion.

{¶34} Mr. Martucci denied ever penetrating the girls' vaginas with his penis. He specified that there was no "actual intercourse" because he "pushed it in just a little bit * * *." He told the police that his sexual encounters with the girls took place in his bedroom, but he never employed force. He said, if the girls were reluctant, he just continued to talk to them and was persistent until "they eventually gave in or whatever."

{¶35} Viewing the evidence in a light most favorable to the prosecution, we must conclude that the State presented sufficient evidence in support of Mr. Martucci's convictions. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. J.S.-S., A.S., A.M., and C.M. each testified as to the ways in which Mr. Martucci sexually abused them. *See Melendez*, 2009-Ohio-4425, at ¶ 15, quoting *Willard*, 2006-Ohio-5071, at ¶ 11. There was testimony that the incidents occurred in Mr. Martucci's bedrooms at his mother's homes and that his mother lived in Green and Akron during the timeframes relevant to the charges. Although the girls could not recall the exact times or dates when the incidents occurred, the evidence was such that the

incidents occurred over an extended period of time and at a time when they were children of a tender age. Accordingly, their inability to be more precise was not fatal to the State's case. *See Just*, 2012-Ohio-4094, at ¶ 9, quoting *Mundy*, 99 Ohio App.3d at 296.

**{¶36}** To the extent Mr. Martucci argues that the girls contradicted themselves or one another at times, a sufficiency analysis only concerns the adequacy of the State's evidence, not its weight. *See Thompkins*, 78 Ohio St.3d at 386-387. Each girl provided testimony in support of the various rape and GSI counts with which Mr. Martucci was charged. Moreover, during his 2013 and 2016 police interviews and his one-party consent call with A.M., Mr. Martucci admitted that he committed the vast majority of the conduct underlying his charges. Upon review, a rationale trier of fact could have concluded that the State satisfied its burden of production. *Jenks* at paragraph two of the syllabus. As such, Mr. Martucci's second assignment of error is overruled.

### ASSIGNMENT OF ERROR ONE

APPELLANT'S CONVICTION WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, AND THE TRIAL COURT LOST ITS WAY WHEN IT FOUND THE APPELLANT GUILTY.

### ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN IMPOSING APPELLANT'S SENTENCE.

### ASSIGNMENT OF ERROR FIVE

THE TRIAL COURT IMPROPERLY AMENDED THE CHARGES WHEN IT CHANGED THE TIME SPAN DURING WHICH THE ALLEGED OFFENSES WERE ALLEGEDLY COMMITTED.

### ASSIGNMENT OF ERROR SIX

THE CUMULATIVE EFFECT OF ALL THE ERRORS DENIED THE APPELLANT THE RIGHT TO A FAIR TRIAL AND DUE PROCESS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED

STATES CONSTITUTION, R.C. 2901.04, AND ARTICLE 1 SECTION 10 OF THE OHIO CONSTITUTION.

**{¶37}** Based on our resolution of Mr. Martucci's fourth assignment of error, the foregoing assignments of error are premature and we decline to address them. *See Purefoy*, 2017-Ohio-79, at ¶ 20.

### III.

**{¶38}** Mr. Martucci's fourth assignment of error is sustained strictly on the basis set forth therein. His second assignment of error is overruled, and this Court declines to address his remaining assignments of error, as they are premature at this juncture. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with the foregoing opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

DANIEL R. BACHE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.