[Cite as *State v. Eagle*, 2026-Ohio-615.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

    v.

MICHAEL EAGLE

    Appellant

C.A. No.      25AP0015

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     2024 CRC-I 000257

DECISION AND JOURNAL ENTRY

Dated: February 23, 2026

---

SUTTON, Judge.

{¶1}    Defendant-Appellant, Michael Eagle, appeals the judgment of the Wayne County Court of Common Pleas.  For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2}    Mr. Eagle and his co-defendant, Travis Mosley, were in the same cell block at the Wayne County Jail, with G.W., another inmate, as well as several other inmates.  In October 2023, Mr. Eagle and Mr. Mosley raped G.W. by inserting a miniature golf sized pencil in his anus.  G.W. reported the sexual assault through an internal communication system known as a kite, which is a hand-written note delivered to corrections officers at the jail.  After receiving the kite, Wayne County Sherriff's corrections officers employed at the Wayne County Jail performed an internal investigation of G.W.'s allegations, including interviewing G.W. and other inmates, and the retrieval of video footage at the time of the sexual assault.

{¶3}     Mr. Eagle was charged with one count of rape, in violation of R.C. 2907.02(A)(2), a felony of the first degree.  Mr. Eagle pleaded not guilty and a consolidated jury trial ensued with Mr. Eagle's co-defendant, Mr. Mosley. At trial, the State presented six witnesses including G.W., three Wayne County Sheriff's corrections officers, and two former inmates who were housed at the Wayne County Jail at the time of the sexual assault.  The State also introduced the video footage from Wayne County Jail.  The jury found Mr. Eagle guilty of rape.

{¶4}     The trial court sentenced Mr. Eagle to 10 to 15 years of imprisonment to be served consecutively with his sentence for aggravated burglary, which he was currently serving in another case.  The trial court also determined Mr. Eagle is a Tier III Sex Offender which requires lifetime reporting.

{¶5}     Mr. Eagle now appeals raising three assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED IN ENTERING A CONVICTION FOR RAPE WHERE THE STATE FAILED TO PRESENT LEGALLY SUFFICIENT EVIDENCE TO ESTABLISH ALL ESSENTIAL ELEMENTS OF THE OFFENSE BEYOND A REASONABLE DOUBT, IN VIOLATION OF MR. EAGLE'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.**

{¶6}     In his first assignment of error, Mr. Eagle argues his conviction for rape is not supported by sufficient evidence.   Specifically, Mr. Eagle argues there is no corroborating evidence of G.W.'s rape allegation, such as DNA, semen analysis, or medical reports.  Mr. Eagle also argues the State failed to prove submission by force or threat of force and the video footage does not "establish sexual conduct."   We, however, do not find Mr. Eagle's arguments compelling.

{¶7} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J. concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶8} Mr. Eagle was found guilty of rape pursuant to R.C. 2907.02(A)(2). R.C. 2907.02(A)(2) states: "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" means:

> vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A). Further, pursuant to R.C. 2901.22(A), "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." Force is defined in the Ohio Revised Code as "any violence, compulsion, or constraint physically exerted by any means

upon or against a person or thing." R.C. 2901.01(A)(1). Additionally, as to complicity, R.C. 2923.03 states, in relevant part:

> (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> . . .
>
> (2) Aid or abet another in committing the offense[.]
>
> . . .
>
> (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

{¶9} Here, G.W. testified he was incarcerated at the Wayne County Jail after pleading guilty to aggravated possession of methamphetamine while he awaited transfer to a drug treatment program for his methamphetamine addiction. During that time, G.W. was in the same cell block as Mr. Eagle and Mr. Mosley, as well as several other inmates. On the day of the sexual assault, G.W. went to cell 2 to see if inmate B.J. wanted to work out. Mr. Eagle was already inside cell 2 and Mr. Mosley also entered the cell. G.W. testified Mr. Mosley then told him they were going to "stick a pencil up [his] ass[.]" Further, G.W. indicated Mr. Eagle and Mr. Mosley "decided to pick me up mid-conversation and strip me naked and [Mr.] Eagle decided to restrain me on the ground while [Mr. Mosley] tried to, and succeeded putting a pencil in my ass."

{¶10} G.W. testified that Mr. Eagle, who is a lot stronger, put him on the ground. At some point, G.W. indicated both Mr. Eagle and Mr. Mosley removed his clothing, stripping him naked, and Mr. Eagle also removed his own clothing. Mr. Eagle held G.W. down by his neck and shoulders in a "headlock" while Mr. Mosley inserted the pencil in G.W.'s anus. G.W. explained he was laying on his back when Mr. Mosley inserted the pencil and he "started flailing trying to get them off of me." G.W. also testified he felt penetration after Mr. Mosley had been poking him

with the pencil. G.W. further testified Mr. Eagle, who was also naked at that point in time, flipped G.W. over on his stomach and climbed on top of him. G.W. described that Mr. Eagle was "thrusting" with no penetration and other inmates were called into the cell to watch as this was happening. Eventually, Mr. Eagle and Mr. Mosley left the cell and G.W. put his clothes back on and also left the cell.

{¶11} G.W. testified he waited a couple of weeks to report the sexual assault because he feared retaliation from Mr. Eagle, who was his cell mate, and Mr. Mosley, who was in the same cell block. G.W. felt it was safe to report the sexual assault after Mr. Eagle and Mr. Mosley were no longer in the same cell block.

{¶12} The State also presented the testimony of former inmates at Wayne County Jail, C.D. and M.S. C.D. testified, at the time of the sexual assault, Mr. Mosley called him over to cell 2 and he witnessed G.W. lying naked face down on the floor and Mr. Eagle was on top of G.W. C.D. also testified he saw Mr. Mosley with a pencil in his hand and witnessed Mr. Mosley "either poke[] [G.W.] in the rectum or insert[] it into the rectum." C.D. indicated this "freaked" him out and he walked away, but he gave a statement to correction officers after G.W. came forward because he could not "really ignore it." C.D. also corroborated that G.W. got roughed up by Mr. Eagle and Mr. Mosley a lot because G.W. was young and could not defend himself.

{¶13} M.S. testified, at the time of the sexual assault, he saw Mr. Eagle naked on top of G.W. "dry humping" him and pulling off G.W.'s clothing. M.S. described this incident as "wrongful horseplay[.]" When M.S. was moved to Richland Correctional Institution, he once again met up with Mr. Eagle and Mr. Mosley. At that time, Mr. Eagle and Mr. Mosley spoke with M.S. about how to "get[] out of" the situation and asked M.S. to write an untruthful letter to the trial court and not testify. M.S. testified he felt forced to write the letter because he was in the

same prison as Mr. Eagle and Mr. Mosley and something might happen to him if he declined to write the letter. Further, M.S. testified Mr. Eagle watched him as he wrote the letter to the trial court. However, as M.S. was getting ready to be released from prison, he decided to write another letter to the trial court informing the court that his prior letter about what happened to G.W. was untrue.

{¶14} The video footage from Wayne County Jail, which is believed to be at the time of the sexual assault, shows G.W. go into cell 2 after Mr. Eagle, but before Mr. Mosley. Mr. Mosley opens the door and calls C.D., M.S., and an unidentified inmate to cell 2. C.D. reacts to something he sees in cell 2, M.S. exits and is laughing, and the unidentified inmate makes a thrusting motion with his pelvis. Mr. Eagle and Mr. Mosley are then seen exiting cell 2 and Mr. Mosley places a pencil on a table. Mr. Eagle makes a circle with his thumb and forefinger and sticks a finger from the opposite hand through the circle. Mr. Eagle returns to cell 2 and Mr. Mosley and M.S. also return to cell 2. M.S. exits cell 2 followed by Mr. Eagle and Mr. Mosley. G.W. exits cell 2 last.

{¶15} Indeed, as this Court has previously stated, "the testimony of the victim in sex offense cases, if believed, is sufficient to support a conviction, even without further corroboration." *State v. Berila*, 2020-Ohio-3523, ¶ 19 (9th Dist.), citing *State v. Martucci*, 2018-Ohio-3471, ¶ 16 (9th Dist.). Further, "[t]he lack of physical evidence in a case where such evidence was unlikely due to the passage of time does not detract from the victim's testimony." *Berila* at ¶ 19, quoting *State v. Morris*, 2012-Ohio-6151, ¶ 63 (9th Dist.) (Carr, J., dissenting). "R.C. 2907.02(A)(2) does not require proof of any physical injury, and it is not uncommon for victims of abuse to delay their reporting." *State v. Powell*, 2014-Ohio-63, ¶ 17 (9th Dist.).

{¶16} In viewing the evidence, as set forth above, in a light most favorable to the State, the trier of fact could reasonably conclude the essential elements of rape, pursuant to R.C.

2907.02(A)(2), were proven beyond a reasonable doubt. Mr. Eagle held G.W. down, by his neck and shoulders, while Mr. Mosley inserted a pencil into G.W.'s anus. G.W. testified as to penetration and also reported to the corrections officers that a pencil was inserted in his anus and he was still having physical pain when he defecated. During the rape, G.W. struggled to free himself by flailing on the ground to get Mr. Eagle and Mr. Mosley off him. Video footage shows Mr. Eagle and Mr. Mosley coming out of cell 2, after the rape, celebrating what had just happened; Mr. Mosley holding the pencil and Mr. Eagle making a very crude gesture to mimic the rape. *See State v. Coker*, 2025-Ohio-2051, ¶ 17 ("In a rape case, inferences can be drawn against the accused and in favor of the State when the record supports it."). *See also State v. Wells*, 91 Ohio St.3d 32, 34 (2001) ("[T]here is sufficient evidence of anal intercourse, for purposes of the crime of anal rape under R.C. 2907.02, where the trier of fact finds that the defendant penetrated, however slightly, the victim's anus with any part of the defendant's body, or with any instrument, apparatus, or other object.").

{¶17} Accordingly, Mr. Eagle's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**MR. EAGLE'S CONVICTION FOR RAPE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶18} In his second assignment of error, Mr. Eagle argues his conviction for rape was against the manifest weight of the evidence.

{¶19} As to manifest weight of the evidence, this Court has previously stated:

[i]n determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶20}  An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the '[trier of fact] is free to believe all, part, or none of the testimony of each witness.'" (Internal quotations and citations omitted.) *State v. Gannon*, 2020-Ohio-3075, ¶ 20 (9th Dist.). "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id*.

{¶21}  Here, Mr. Eagle mainly challenges G.W.'s credibility, because he is an addict, and he also claims no witness, other than G.W., testified about observing any sexual conduct.  Mr. Eagle also references the Wayne County Jail video footage and argues it is "speculative" and "did not demonstrate sexual conduct by force."  The jury, however, heard G.W.'s direct testimony about his methamphetamine addiction and also heard Mr. Eagle's and Mr. Mosley's counsels' cross-examinations regarding the same.  Indeed, the jury clearly believed G.W.'s testimony regarding penetration with the pencil in his anus, and there is nothing in this record to compel this Court to determine otherwise.

{¶22}  Additionally, although C.D.'s testimony and M.S.'s testimony are slightly inconsistent with each other and with G.W.'s testimony, neither C.D., nor M.S., were inside cell 2 with G.W. for the full duration of the rape.  Further, C.D. testified he saw Mr. Mosley "either poke[] [G.W.] in the rectum or insert[] it into the rectum."  The jury also heard testimony from

M.S. that Mr. Eagle and Mr. Mosley did not want M.S. to testify and forced M.S. to write an untruthful letter to the trial court. *See State v. Austin*, 2017-Ohio-7845, ¶ 19 (9th Dist.) ("[P]rosecutors may elicit testimony on direct examination that the defendant asked a witness 'to fabricate an alibi for him,' because such evidence 'strongly indicates consciousness of guilt[.]'").

{¶23} As to the Wayne County Jail video footage, there was clear testimony that there are no cameras in the individual cells so inmates may have some privacy. The purpose of the video footage was not to show sexual conduct or the rape itself, but to allow the jury to see Mr. Eagle's and Mr. Mosley's actions directly after the rape.

{¶24} Upon review of this record, Mr. Eagle has not persuaded us that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶25} Accordingly, Mr. Eagle's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ERRED IN IMPOSING A CONSECUTIVE PRISON TERM WITHOUT MAKING THE FINDINGS REQUIRED BY R.C. 2929.14(C)(4) AND WITHOUT PROPERLY CONSIDERING THE PURPOSES AND PRINCIPLES OF FELONY SENTENCING UNDER R.C. 2929.11 AND THE SERIOUSNESS AND RECIDIVISM FACTORS UNDER R.C. 2929.12.**

{¶26} In his third assignment of error, Mr. Eagle argues the trial court erred in sentencing him to consecutive sentences because the trial court did not make all the statutory findings required by R.C. 2929.14(C)(4), and the trial court failed to properly weigh the purposes and principals of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12.

{¶27} The Supreme Court of Ohio has held that "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise

contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1; R.C. 2953.08(G)(2). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

**{¶28}** "Trial courts may impose a prison sentence within the statutory range and are not required to make findings or give their reasons for imposing more than the minimum sentences." *State v. Wheelock*, 2024-Ohio-1913, ¶ 29 (9th Dist.). "[N]evertheless, . . . , the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender." *State v. Mathis*, 2006-Ohio-855, ¶ 38. "Unless the record shows that [a] court failed to consider the factors, or that the sentence is 'strikingly inconsistent' with the factors, the court is presumed to have considered the statutory factors if the sentence is within the statutory range." *State v. Fernandez*, 2014-Ohio-3651, ¶ 8 (9th Dist.), quoting *State v. Boysel*, 2014-Ohio-1272, ¶ 13 (2d Dist.).

**{¶29}** In *State v. Bonnell*, 2014-Ohio-3177, ¶ 37, the Supreme Court of Ohio explained:

> In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings. Nor is it required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry.

Further, "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *State v. Bennett*, 2018-Ohio-3935, ¶ 10 (9th Dist.), quoting *State v. Blackert*, 2015-Ohio-2248, ¶ 10 (9th Dist.).

**{¶30}** R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶31} Here, the trial court sentenced Mr. Eagle to 10 to 15 years imprisonment for rape to be served consecutively with the sentence Mr. Eagle was currently serving for aggravated burglary.

{¶32} In its journal entry, the trial court stated, "[t]he [c]ourt has considered the record, oral statements, any victim impact statement, presentence investigation report, the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors relevant to the offense and offender pursuant to R.C. 2929.12, and the need for deterrence, incapacitation, rehabilitation and restitution." As to consecutive sentences, the trial court further stated:

The [c]ourt finds that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and the offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant ot section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶33} At the sentencing hearing, when discussing the imposition of consecutive sentences and addressing Mr. Eagle's behavior in court, the trial court stated:

. . .

I am going to do what I'm going to do because you're demonstrating to me that there's no other choice as to what to do. Okay? I am going to make it consecutive sentences to what you're currently in prison for because I do think it's necessary to punish you and to protect the public from future crime and it's not disproportionate to the seriousness of the conduct and danger posed by you. Again, you were awaiting disposition of your case at the time this occurred in the jail. Your criminal history demonstrates that consecutive sentences are necessary to protect the public, your ongoing behavior is, you need to be incarcerated for as long as possible.

{¶34} The record in this matter indicates the trial court considered all relevant principles and purposes of sentencing, pursuant to R.C. 2929.11, as well as the seriousness and recidivism factors, pursuant to R.C. 2929.12. Further, the trial court made the requisite findings for consecutive sentences, pursuant to R.C. 2929.14(C)(4), and the record contains more than ample evidence supporting the trial court's findings in this regard.

{¶35} Accordingly, Mr. Eagle's third assignment of error is overruled.

III.

{¶36} For the foregoing reasons, Mr. Eagle's three assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

CARR, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

YU KIM-REYNOLDS, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and JOSEPH SALZGEBER, Assistant Prosecuting Attorney, for Appellee.