[Cite as *State v. Soto*, **2017-Ohio-4348.**]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     16CA011024 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| VITTORIO SOTO | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | CASE No.     14CR090763 |

## DECISION AND JOURNAL ENTRY

Dated: June 19, 2017

CALLAHAN, Judge.

{¶1}    Appellant, the State of Ohio, appeals from the judgment of the Lorain County Court of Common Pleas, granting Appellee, Vittorio Soto's, motion to suppress. For the reasons set forth below, this Court reverses.

I.

{¶2}    Mr. Soto was indicted on two counts of rape involving a person less than 10 years of age.  Prior to his arrest, Mr. Soto was interviewed by Detective Tabitha Angello at the Lorain Police Department.   During the interview, Mr. Soto gave a videotaped statement wherein he admitted the allegations. Mr. Soto moved to suppress all of his statements made during the interview, arguing that Detective Angello did not inform him of his *Miranda* rights and his confession was induced by direct and indirect promises made by Detective Angello during the interview.  The trial court concluded that Mr. Soto's confession was not induced by direct or

indirect promises, but he was in custody and entitled to *Miranda* rights when he made his confession. The trial court granted Mr. Soto's motion to suppress.

{¶3} The State timely appeals the trial court's ruling and raises three assignments of error.

II.

**FIRST ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING MR. SOTO'S MOTION TO SUPPRESS BECAUSE THE FINDINGS OF FACT ARE NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE.

{¶4} The State argues that the trial court committed two errors relative to the findings of fact. First, the State asserts the trial court's findings of fact regarding Detective Angello's uniform are not supported by competent, credible evidence. Second, the State maintains the trial court failed to make certain findings of fact that were supported by the evidence. This Court disagrees with the first argument, but agrees with the second argument.

{¶5} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court gives deference to and "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). Therefore, this Court grants deference

to the trial court's findings of fact, but conducts a de novo review of whether the trial court applied the appropriate legal standard to those facts. *State v. Booth*, 151 Ohio App.3d 635, 2003-Ohio-829, ¶ 12 (9th Dist).

**Detective Angello's uniform**

{¶6} The State argues the trial court's finding of fact that Detective Angello was in a uniform during Mr. Soto's interview is not supported by competent, credible evidence. "[A]n appellate court's review of the trial court's findings of fact looks only for clear error, giving due deference as to the inferences drawn from the facts by the trial court." *State v. Hunter*, 151 Ohio App.3d 276, 2002-Ohio-7326, ¶ 24 (9th Dist.), citing *State v. Russell*, 127 Ohio App.3d 414, 416 (9th Dist.1998).

{¶7} The trial court found that during the interview Detective Angello was "dressed in her police uniform, with her badge on and * * * carrying her sidearm." On cross-examination, Detective Angello testified that she was not wearing her "actual police uniform" but was wearing her "detective outfit" which included a black shirt with a gold emblem saying "Lorain Police." Additionally, she testified she was "designated as a police officer," and had a badge and her service revolver on her at the time of the interview. The video depicts Detective Angello wearing a black polo shirt with a large gold emblem shaped like a badge on her upper left chest and khaki pants.

{¶8} The State takes issue with the trial court's finding that Detective Angello was wearing "her police uniform." While Detective Angello was not wearing a patrolman's uniform, the evidence before the trial court reflected she was dressed in her detective's uniform. The shirt displayed a prominent emblem identifying Detective Angello as a member of the Lorain Police Department. Additionally, Detective Angello stated her clothing identified her as a police

officer. Her clothing, combined with the presence of her badge and sidearm functionally created a "police uniform." Accordingly, the trial court's finding of fact that Detective Angello was wearing a police uniform is supported by competent, credible evidence.

**Incomplete facts**

{¶9} The State also argues the trial court failed to make any findings regarding ten facts that were supported by Detective Angello's testimony and/or the videotape of the interview and such facts were relevant to making a determination of whether Mr. Soto was in custody during the interview. Mr. Soto concedes the trial court's findings of fact are silent as to these ten facts, but argues these facts are not relevant. Additionally, Mr. Soto asserts this Court has all the evidence before it and, thus, there is no prejudice to the State if any facts were omitted in the findings of fact.

{¶10} As noted above, this Court will accept a trial court's factual findings if they are supported by competent, credible evidence. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. However, a trial court's findings of fact are deemed incomplete when they fail to include pertinent facts that were presented during the hearing and which are necessary to conduct the legal analysis. *See State v. Trivett*, 9th Dist. Medina No. 15CA0041-M, 2016-Ohio-8204, ¶ 7-8. Additionally, the findings of fact are incomplete when the trial court fails to evaluate the credibility of the witnesses and resolve questions of fact. *See State v. Martin*, 9th Dist. Summit No. 24812, 2009-Ohio-6948, ¶ 14. As indicated earlier, the trier of fact evaluates the credibility of the witnesses, weighs the evidence, and resolves questions of fact in a suppression hearing. *Burnside* at ¶ 8. This Court has a limited standard of review as to the facts and is not permitted to fill-in gaps. *Martin* at ¶ 14, citing *State v. Guysinger,* 86 Ohio App.3d 592, 594 (4th Dist.1993). In the absence of necessary facts and determinations as to credibility and disputed facts, the

reviewing court cannot conclude the trial court's findings of fact are supported by competent, credible evidence. *See Martin* at ¶ 13-14; *see Trivett* at ¶ 8.

**Custodial interrogation**

{¶11} "'[C]ustody'" for purposes of entitlement to *Miranda* rights exists only where there is a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). "'Whether a suspect is in custody depends on the facts and circumstances of each case.'" *State v. Butler*, 9th Dist. Summit No. 23786, 2008-Ohio-781, ¶ 27, quoting *State v. Dunn*, 9th Dist. Lorain No. 04CA008549, 2005-Ohio-1270, ¶ 24. "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." (Internal citations omitted.) *Howes v. Fields*, 565 U.S. 499, 509 (2012). Other factors considered by courts when determining when a person is in custody include whether the suspect is informed he is not under arrest and may leave, the ability to leave at the conclusion of the interview, access to a cell phone during the interview, whether an officer is armed and displays the weapon in a threatening fashion, being in a room with a closed, unlocked door, and voluntarily going to the police station for the interview. *See, e.g., State v. Brantley*, 9th Dist. Wayne No. 27466, 2016-Ohio-4680, ¶ 60-62 (collecting cases). When evidence of these factors are present in the record, it is necessary to examine such factors to determine, "'whether, under the totality of the circumstances, a reasonable person would have believed that he was not free to leave.'" *Butler* at ¶ 27, quoting *Dunn* at ¶ 24.

{¶12} The trial court's findings of fact, although supported by the record, are based almost entirely on the content of the videotaped interview. The limited findings about the

location and atmosphere of the interview are that it was held at the Lorain Police Department headquarters in a conference room with the door closed and Detective Angello was in her police uniform complete with a badge and gun. The State argues there are multiple gaps in the findings of fact that are pertinent to the analysis of custodial interrogation. These facts include the size and the layout of the room, who was present in the room, the positioning of Mr. Soto and Detective Angello in the room, any obstructions to the exit, whether any restraints were used on Mr. Soto, when the door was open and closed during the duration Mr. Soto was in the room, how far the door was open, if the door was locked, whether Mr. Soto had access to his cell phone and whether he used it, how often and for how long Mr. Soto was alone in the briefing room, the length of the interview, whether Mr. Soto appeared voluntarily for the interview, Mr. Soto's means of travel to the police station, whether anyone accompanied Mr. Soto to the police station and was waiting for him at the station, what happened to Mr. Soto at the conclusion of the interview, whether Mr. Soto was arrested, Detective Angello's demeanor throughout the interview, and whether Detective Angello displayed her sidearm in a threatening fashion.

{¶13} All of these factors were discernible upon reviewing the videotape of the interview and the testimony of Detective Angello and were pertinent to the analysis of whether Mr. Soto was in custody. However, the trial court made no determinations regarding any of these facts. Consequently, this Court cannot determine the extent to which they were considered. Accordingly, the trial court's findings of fact are incomplete.

{¶14} Further, the findings of fact contained no analysis or discussion of Detective Angello's testimony. Detective Angello testified that as they walked to the briefing room she "thanked [Mr. Soto] for coming, told him [he] shouldn't be here too long[, ] asked him if he had a ride or if he got dropped off[, ] explained to him [they] were going to talk for a little bit, that he

wasn't under arrest and [she] usually shut[s] the door for noise and privacy issues." Detective Angello testified this discussion occurred in the hallway and was not recorded. On cross-examination, Detective Angello conceded her report did not specify when or where this conversation occurred.

{¶15} Additionally, Detective Angello initially testified on cross-examination that she told Mr. Soto during the interview that he was free to leave. However, upon further cross-examination she conceded that the transcript of the interview does not contain any such statement by her.

{¶16} Detective Angello was the only witness at the suppression hearing. Detective Angello's testimony regarding the discussions immediately preceding the interview was crucial evidence regarding whether Mr. Soto was in custody. However, the trial court did not make any findings of fact as to any conflicting evidence or discrepancies and did not address witness credibility as it may have pertained to any discrepancies. Because the trial court is the trier of fact in a suppression hearing, it is in the best position to resolve questions of fact and evaluate witness credibility. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Because such determinations were not made, the findings of fact are incomplete.

{¶17} Having concluded that the trial court's findings of fact are incomplete, this Court concludes the trial court erred in granting Mr. Soto's motion to suppress. Because the trial court has failed to adequately set forth its findings of fact, this Court cannot properly apply the law. Accordingly, this Court must remand to the trial court to set forth its findings of fact with regard to 1) the omitted factors listed above, and 2) any discrepancies in the evidence and witness credibility.

{¶18} The State's first assignment of error is sustained solely as it pertains to the findings of fact that the trial court failed to make.

## SECOND ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY APPLYING INCORRECT LAW WHEN IT DETERMINED THAT MR. SOTO WAS ENTITLED TO A READING OF THE *MIRANDA* RIGHTS WARNING DURING THE NON-CUSTODIAL INTERVIEW.

{¶19} The State contends the trial court applied an incorrect legal standard to the facts of this case. Specifically, the State points to the trial court's reliance upon subjective elements in determining the interview was custodial. This Court agrees.

{¶20} The disputed issue in the suppression hearing was whether the interview was a custodial interrogation, thereby triggering *Miranda* warnings.

> In order to determine whether a person is in custody for purposes of receiving *Miranda* warnings, courts must first inquire into the circumstances surrounding the questioning and, second, given those circumstances, determine whether a reasonable person would have felt that he or she was not at liberty to terminate the interview and leave.

*State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, ¶ 27, citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). After constructing the factual circumstances of the interrogation, the court must apply an objective test to determine whether there was a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Hoffner* at ¶ 27, quoting *Beheler*, 463 U.S. at 1125, quoting *Mathiason*, 429 U.S. at 495. The custody determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *State v. Henry,* 12th Dist. Preble No. CA2008-04-006, 2009-Ohio-434, ¶ 13; *see State v. Sublett*, 9th Dist. Medina No. 1914, 1990 WL 177462, *2 (Nov. 7, 1990). "[T]he only relevant inquiry is how a

reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

{¶21} The trial court's decision cited to similar principles of law. It went on to address the objective circumstances of the interview by discussing the location and the atmosphere surrounding the interview. However, the trial court deviated from its objective analysis when it said "[w]hat [Mr. Soto] was thinking is an important consideration." This is an improper inquiry into Mr. Soto's subjective view. The trial court incorrectly cited to *Berkemer* in support of this proposition. However, *Berkemer* stated that "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id*. at 442. Despite the case law, the trial court considered "[w]hat [Mr. Soto] was thinking."

{¶22} The trial court went on to state "[t]he focus of a court's inquiry should be on the detainee rather than the interrogator." The court gave no legal citation for this proposition. Nonetheless, this statement is incorrect. The subjective views of both the interrogator and the detainee are not relevant when determining if a person is in custody. *See Henry* at ¶13; *see Sublett* at *2. Instead, the court is to consider whether "a reasonable person would have felt he or she was not at liberty to terminate the interview and leave." *Hoffner* at ¶ 27.

{¶23} Additionally, the trial court's confusion as to the correct legal standard arose during the suppression hearing.

> THE COURT: Well, really, the issue is for the [c]ourt to determine whether or not, based on the facts presented at this hearing, [Mr. Soto] would have thought whether he was free to leave or not, not what the detective thinks.
>
> [DEFENSE COUNSEL]: Judge, that's true, * * * but the law requires, and I'll show it to you, it's an objective analysis, not a subjective analysis.
>
> THE COURT: Which is why I'm able to make the decision objectively, looking at the facts a reasonable person would believe that they got.

[DEFENSE COUNSEL]:  Reasonable person.  Got it.

THE COURT:  I understand that.

[DEFENSE COUNSEL]:  But her position that he was not in custody, all right, is evidence to the [c]ourt, her thinking process on that issue.

THE COURT:  Well, what she thinks doesn't really matter to this court.

* * *

THE COURT:  The facts you've laid out so far about her being in a uniform, where they were located, whether the door was open or shut, those are objective facts –

[DEFENSE COUNSEL]:  Right.

THE COURT:  – that I could consider.  Whether [Mr. Soto] – whether the detective thought he was under arrest or not isn't the issue.  She didn't give the statement.

While the trial court indicated the need to look at the objective circumstances of the interview and not to consider the subjective views of the detective, it appeared to have remained fixated on what Mr. Soto thought. That is an application of the subjective standard and not the objective reasonable person standard. The trial court then made a statement that it can "make the decision objectively." This statement does not comport with the correct legal standard.

{¶24}  Mr. Soto "[a]dmitted[] the trial court [] segued into the aforementioned language regarding Mr. Soto's subjective responses to this stimuli and the trial court's dubious assertion that what Mr. Soto thought is an important consideration." However, Mr. Soto attempted to minimize this incorrect statement of law by noting the remainder of the decision where the trial court recited the law correctly. While the trial court made correct statements of law, it also made incorrect statements of law and applied both to the facts of this case.  This Court cannot separate out the incorrect statements of law from the correct statements of law as the trial court's analysis is intertwined with both.  Nor can this Court ignore the incorrect statements of law.

{¶25} Because the trial court improperly applied both the subjective and objective standards to the custody analysis, the trial court committed an error of law. Having concluded that the trial court applied the incorrect law, this Court concludes the trial court erred in granting Mr. Soto's motion to suppress. Accordingly, this Court must remand to the trial court for it to apply the correct law.

{¶26} The State's second assignment of error is sustained.

### THIRD ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING MR. SOTO'S MOTION TO SUPPRESS BECAUSE THE TRIAL COURT INCORRECTLY FOUND THAT A REASONABLE PERSON IN MR. SOTO'S POSITION WOULD NOT HAVE BELIEVED THAT HE WAS FREE TO [LEAVE] THE INTERVIEW AND THEREFORE WAS ENTITLED TO A READING OF THE *MIRANDA* RIGHTS WARNING.

{¶27} In the third assignment of error, the State argues that the trial court incorrectly determined that Mr. Soto was in custody and entitled to *Miranda* rights at the interview. However, this Court's resolution of the State's first and second assignments of error renders the third assignment of error moot and this Court declines to address it. *See* App.R. 12(A)(1)(c).

III.

{¶28} The State's first and second assignments of error are sustained. This Court declines to address the State's third assignment of error as it has been rendered moot. The judgment of the Lorain County Court of Common Pleas is reversed and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellant.

MICHAEL J. DUFF, Attorney at Law, for Appellee.