[Cite as *State v. Fisk*, 2021-Ohio-2989.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-11-016 |
| | : | O P I N I O N |
| - vs - | | 8/30/2021 |
| | : | |
| STEVEN M. FISK, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 20CR13208


Martin P. Votel, Preble County Prosecuting Attorney, and Gractia S. Manning, Assistant Prosecuting Attorney, for appellee.

Hubler and Woolum Law Co., LPA, and Bridget N. Woolum, for appellant.



**BYRNE, J.**

{¶1}  Steven M. Fisk appeals from a decision of the Preble County Court of Common Pleas, which denied his motion to suppress evidence following a traffic stop and pat down search by a police officer.  For the reasons described below, we find that the stop and search were lawful and affirm the trial court's decision.



Factual and Procedural Background

{¶2} In December 2019, a Preble County sheriff's deputy detained Fisk for a traffic violation while Fisk was operating a bicycle. During that stop, the deputy searched Fisk for weapons and felt objects in Fisk's pocket that he believed were a syringe and a tube-shaped container for carrying drugs. He asked Fisk to produce the objects. Fisk refused, ran away, and was quickly captured. Law enforcement recovered a tube-shaped container containing methamphetamine where Fisk had fled.

{¶3} In January 2020, a Preble County grand jury indicted Fisk on one count of aggravated possession of drugs, one count of obstructing official business, and one count of possession of drug paraphernalia.

{¶4} Fisk subsequently moved to suppress, arguing that the sheriff's deputy did not have lawful cause to stop and detain him or search him for weapons. The trial court held a suppression hearing at which the only witness to testify was the sheriff's deputy. The state also introduced dash camera video, in which most of the stop was recorded visually or audibly.[1]

Deputy Laycox's Testimony at the Suppression Hearing

{¶5} Preble County Sheriff's Deputy David Laycox testified to the following at the suppression hearing.

{¶6} On December 28, 2019, Deputy Laycox was sitting in his cruiser in a parking lot off U.S. Route 35 in West Alexandria. It was 7:35 p.m. and dark. He observed an individual – Fisk – riding a bicycle on Route 35. He noted that the bicycle did not have rear reflectors or a red lamp light but did have a blue light on wheel spokes. He drove behind the bicycle, illuminated his flashing lights, and initiated a traffic stop.

---

1. The deputy's initial interactions with Fisk, including the pat down search, were not video-recorded, as Fisk positioned himself on the passenger side of the cruiser and out of the vantage point of the dash camera. However, audio of the complete conversation was recorded on the deputy's body microphone.

{¶7} When Deputy Laycox was behind the bicycle and had activated his lights, he believed, mistakenly, that Fisk was someone else who he had been looking for and who had an active warrant.

{¶8} At the beginning of the stop, Fisk acknowledged to Deputy Laycox that he was aware that the battery on his bicycle light was out. He explained that he hoped that the blue light would be sufficient.

{¶9} Deputy Laycox asked Fisk for his I.D. Fisk produced an identification card. At this time, Deputy Laycox realized he had been wrong about his assumption as to Fisk's identity. He called Fisk's information into dispatch.

{¶10} Deputy Laycox indicated that he was familiar with the Fisk family and had previously encountered Fisk's brother and found him to be carrying a B.B. gun, which gave him concern that Fisk may be carrying a weapon. He also noted what appeared to be a metal bat in a bag hanging from Fisk's bicycle handles. While waiting for dispatch to respond, he asked Fisk whether he could search him for weapons. Fisk responded, "Sure."

{¶11} Deputy Laycox searched Fisk and felt a tube and a syringe in Fisk's right pocket. Deputy Laycox believed, based upon his personal experience, that the tube would contain narcotics as it was of a type generally used to carry contraband.

{¶12} Meanwhile, dispatch responded and indicated that Fisk had a warrant. Deputy Laycox informed Fisk that he had a warrant and began to handcuff him. However, dispatch quickly advised that there had been a mistake, and that Fisk did not have a warrant. Deputy Laycox released Fisk and put away his handcuffs.

{¶13} Deputy Laycox then began to explain to Fisk that he believed he had felt contraband in his pocket. He explained that the "plain feel" doctrine gave him the right to demand to inspect those objects and indicated that Fisk could either remove the objects from his pocket himself or that Deputy Laycox would remove the objects for him.

{¶14} At that point, Fisk began backing away from Deputy Laycox and another police officer who had arrived on scene. Fisk indicated that he was not going to remove anything from his pocket, that he did not have to, and that Deputy Laycox needed a search warrant. Deputy Laycox ordered Fisk to stop walking away, but Fisk ignored the command and continued backing away.

{¶15} Seconds later, Fisk turned and ran into a cornfield. Deputy Laycox and the other officer pursued and quickly caught Fisk by tackling him. The officers and Fisk briefly wrestled until they were able to restrain him.

{¶16} The officers led Fisk back to Deputy Laycox's cruiser. Upon searching Fisk, the items that Deputy Laycox had felt in Fisk's pockets were missing. Law enforcement searched the area. No syringe was ever located. However, a tube-shaped container containing a crystal-like substance was recovered in the area where Deputy Laycox tackled Fisk. The substance was tested and was identified as methamphetamine.

## The Trial Court Decision

{¶17} The trial court denied Fisk's motion to suppress. The court found the absence of a red reflector and red light on the rear of Fisk's bike constituted a traffic infraction and a lawful reason to stop Fisk. The court next found that Deputy Laycox did not have a sufficient basis to believe that Fisk was armed and dangerous and therefore did not have the right to conduct a warrantless pat down search for weapons. However, the court found that the search was lawful because Deputy Laycox asked Fisk for consent to search, and Fisk gave consent. Finally, the court found, based on the "plain feel" doctrine, that Deputy Laycox had probable cause to believe that the objects found in Fisk's pants pocket were contraband and that he could lawfully seize those objects without a warrant.

{¶18} Following the decision on the motion to suppress, Fisk pled no contest to possession of drugs and obstructing official business and the court found Fisk guilty of those

charges. The state dismissed the paraphernalia charge. Fisk appeals, raising one assignment of error:

{¶19} THE TRIAL COURT ERRED IN DENYING THE APPELLANT-DEFENDANT'S MOTION TO SUPPRESS EVIDENCE.

{¶20} Fisk argues that Deputy Laycox lacked a lawful cause to stop him because he did not have a reasonable, articulable suspicion that Fisk was involved in any criminal activity. Fisk further argues that the pat down search was unlawful because Deputy Laycox lacked any reasonable basis to believe that he was armed and dangerous.

{¶21} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. An appellate court must defer to the trial court's factual findings if they are supported by competent, credible evidence. *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 14. However, an appellate court independently determines, without deference to the trial court's decision, whether the facts satisfy the applicable legal standard. *State v. Cummins*, 12th Dist. Clermont No. CA2018-07-051, 2019-Ohio-1496, ¶ 22.

{¶22} The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

{¶23} The language of Article I, Section 14 of the Ohio Constitution is virtually identical to the language of the Fourth Amendment. Due to their virtually identical language, the Ohio Supreme Court found that "we should harmonize our interpretation of Section 14, Article I of the Ohio Constitution with the Fourth Amendment, unless there are persuasive reasons to find otherwise." *State v. Robinette*, 80 Ohio St.3d 234, 239 (1997). On rare occasions the protections recognized by Article I, Section 14 of the Ohio Constitution have

been found to be greater than the protections recognized by the Fourth Amendment. *See State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, ¶ 7 (holding that "Section 14, Article I of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors"). While Fisk brings his assignment of error under both the Fourth Amendment and Article I, Section 14 of the Ohio Constitution, he offers no argument as to why we should conclude that the analysis in this case should differ under these two constitutional provisions. Because Fisk has not offered any "persuasive reasons" to find that Article I, Section 14 of the Ohio Constitution and the Fourth Amendment differ with respect to his claims, we will analyze the two together.

### The Traffic Stop

{¶24} "A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment and must comply with the Fourth Amendment's general reasonableness requirement." *State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 18, citing *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769 (1996). One type of lawful traffic stop is an investigatory stop, also known as a *Terry* stop, which requires the law enforcement officer to possess a reasonable suspicion based on specific and articulable facts that criminal behavior has occurred or is imminent. *State v. Moeller*, 12th Dist. Butler No. CA99-07-128, 2000 WL 1577287, *2 (Oct. 23, 2000); *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968). Another type of permissible traffic stop is where a police officer has probable cause to stop a vehicle because the officer observed a traffic violation. *State v. Bullock*, 12th Dist. Clinton No. CA2016-07-018, 2017-Ohio-497, ¶ 6.

{¶25} Even a de minimis traffic violation provides probable cause for a traffic stop. *Willis* at ¶ 19, citing *State v. Williams*, 12th Dist. Clinton No. CA2009-08-014, 2010-Ohio-1523, ¶ 13. The Ohio Supreme Court has explained that where an officer has probable

cause to stop a motorist for any criminal violation, including a minor traffic violation, "the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), paragraph one of the syllabus.

{¶26} Fisk's argument concentrates on whether the stop was a valid investigatory stop under *Terry*. Fisk contends that Deputy Laycox unlawfully stopped him based on the incorrect suspicion that he was another person with a warrant.[2] However, Fisk's argument ignores that Deputy Laycox initiated the stop based upon a traffic infraction.

{¶27} R.C. 4511.56 governs the equipment required to legally operate a bicycle on a street or highway from sunset to sunrise, among other times. All bicycles operated during these hours must be equipped with a rear-facing red reflector and/or a lamp emitting a flashing or steady red light visible within the foot requirement set forth in the statute. R.C. 4511.56(A)(2) and (A)(3). A violation of the statute constitutes a minor misdemeanor. R.C. 4511.56(E). The lack of a rear-facing red reflector and/or red lamp light on the bicycle operated by Fisk on U.S. Route 35 constituted a traffic infraction and provided Deputy Laycox with the lawful right to stop and detain him for the purpose of issuing a traffic citation. *Bullock*, 2017-Ohio-497, ¶ 6.

### The Pat Down Search

{¶28} In his second issue presented, Fisk argues that Deputy Laycox did not have a lawful basis to conduct a pat down search because he did not have a reasonable belief that Fisk was armed and dangerous. "When a search occurs without a warrant, the state

---

2. Based upon our review of the hearing transcript, it appears that Deputy Laycox did not suspect Fisk was this other individual until he had already pulled out of the parking lot and was behind Fisk and had turned on his flashing lights. In other words, Deputy Laycox did not think he knew who the individual was until he was closer to him.

has the burden to show that the search comes within one of the judicially recognized exceptions to the warrant requirement." *State v. Parker*, 12th Dist. Butler No. CA2001-06-143, 2002 WL 553713, *2 (April 15, 2002), citing *State v. Akron Airport Post No. 8975*, 19 Ohio St.3d 49, 51 (1985). One exception allows a pat down search for weapons for the protection of the police officer, where the officer has a reasonable, specific, and articulable belief that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. *Terry*, 392 U.S. at 21, 27. Another exception exists when searches are conducted with consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041 (1973); *State v. Posey*, 40 Ohio St.3d 420, 427 (1988). The *Terry* requirement of reasonable suspicion is avoided entirely when a person voluntarily consents to a search. *Parker* at *2, citing *State v. Wilt*, 2d Dist. Montgomery No. 19108, 2002 WL 272593, *3 (Feb. 22, 2002).

{¶29} When a person is lawfully detained by police and consents to a search, the state must show that the consent was freely and voluntarily given. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319 (1983). In determining whether consent was voluntary, a court must consider the totality of the circumstances. *Schneckloth* at 227; *State v. Childress*, 4 Ohio St.3d 217 (1983), paragraph one of the syllabus.

{¶30} The trial court found that Fisk voluntarily consented to a pat down search by Deputy Laycox. Competent and credible evidence in the record supports this conclusion.[3] Deputy Laycox testified that he asked Fisk for permission to search for weapons and that Fisk gave him permission. The video/audio recording of the stop confirms Deputy Laycox's testimony. On it, Deputy Laycox is heard asking Fisk, "do you mind if I check you real quick? I just want to check to make sure you have no weapons on you." Fisk responded,

---

3. Fisk does not argue on appeal that his consent was not freely and voluntarily given.

"Sure." Fisk's voluntary consent to the search obviated the need for Deputy Laycox to have a reasonable, articulable suspicion that Fisk was armed and dangerous prior to conducting the pat down search. *Parker* at *2.

{¶31} And the subsequent attempt by Deputy Laycox to seize the contraband he felt on Fisk after conducting the pat down search was justified by the plain feel doctrine. Under the plain feel doctrine, if, during a pat down, the officer feels an object whose contour or mass makes its identity immediately apparent as contraband, the officer may seize the object. *Minnesota v. Dickerson*, 508 U.S. 366, 375-376, 113 S.Ct. 2130 (1993). The "immediately apparent" requirement is satisfied if the officer has probable cause to associate the object with criminal activity, based on the totality of the surrounding circumstances. *State v. Grant*, 12th Dist. Preble No. CA2014-12-014, 2015-Ohio-2464, ¶ 17. Further, under the "plain feel" doctrine, an officer may not manipulate the object to determine its incriminating nature. *Id.*

{¶32} At the hearing, Deputy Laycox testified that he felt a tube and syringe while patting down Fisk's right pocket. He did not manipulate either object. Deputy Laycox testified that he knew from personal experience that the tube would likely contain contraband. We agree that the totality of circumstances indicated that Deputy Laycox had the right, under the plain feel doctrine, to seize the items he felt in Fisk's pocket. For the foregoing reasons, we overrule Fisk's sole assignment of error.

{¶33} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.