[Cite as *State v. Massey*, 2022-Ohio-100.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellant, | : | CASE NO. CA2021-03-010 |
| | : | O P I N I O N |
| - vs - | | 1/18/2022 |
| | : | |
| MAI THI MASSEY, | : | |
| Appellee. | : | |

CRIMINAL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CRI20-500-189

Andrew T. McCoy, Clinton County Prosecuting Attorney, and Lauryn G. Kitchen, Assistant Prosecuting Attorney, for appellant.

Alycia Bemmes, Clinton County Public Defender, for appellee.

**BYRNE, J.**

{¶1} The state of Ohio appeals from the decision of the Clinton County Court of Common Pleas, which granted defendant-appellee Mai Thi Massey's motion to suppress and prohibited the state from using evidence seized during a traffic stop. For the reasons that follow, we affirm the trial court's decision.[1]

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this case from the accelerated calendar for purposes of issuing this opinion.

**I. Indictment and Motion to Suppress**

{¶2}   A Clinton County grand jury indicted Massey on one count of aggravated possession of drugs.   The indictment arose from a traffic stop initiated by a City of Wilmington police officer, during which the officer searched Massey's purse and recovered methamphetamine.   Massey subsequently moved to suppress all evidence recovered during the stop.

**II. The Suppression Hearing**

{¶3}   Wilmington Police Officer Jordan Ianson testified that he had been a K-9 officer for two years.  He performed his job as a police officer by looking for cars to stop and looking for suspicious activity.  He testified that if "I see [people who had told him in previous encounters that they used narcotics] driving [then I] try to get some probable cause to get them stopped, talk to them and go from there."

{¶4}   Consistent with Officer Ianson's statement about his policing methods, he testified that on May 17, 2020, he observed Massey driving in her van the opposite direction from the direction he was driving.  He knew Massey.  During a previous encounter with Massey, he learned that she had a suspended driver's license.  He performed a U-turn and drove behind Massey's van.

{¶5}   Officer Ianson initially testified that he was behind Massey's van as she approached a stop bar at the intersection of two streets.  Officer Ianson claimed that he could see that the van moved beyond the stop bar because the van was "kind of at a slant in the intersection."  At this point Officer Ianson initiated a traffic stop.

{¶6}   Officer Ianson's body camera footage was then played for the court.  The footage commences after Officer Ianson pulled the van over and as he is approaching the

van.[2]

{¶7}    The footage depicts Officer Ianson greeting Massey by name.  He then tells her, "you know you ain't got a license."  Massey responds, "yeah I do" and confirms that she "paid it" a couple days ago.  Officer Ianson responds, "okay," and then gestures behind the van and states, "you also didn't … you pulled past that stop bar up there."  Massey, reacting incredulously, denies that she pulled past the stop bar.

{¶8}    Officer Ianson then asks Massey for her driver's license, which she produces and hands to him.  Officer Ianson then asks Massey where she's coming from.  She points in a direction.  The officer asks her the question a second time and she responds, "oh, we were just driving around."  Officer Ianson then walks back to his police cruiser and sits in the driver's seat.  Moments later he confirms that Massey's driver's license is valid.  He comments to another officer on scene that, "she got it back," referring to the license.  He then tells the other officer, "I'm going to pull her out, see if she'll give me anything."

{¶9}    Officer Ianson walks back to the van and tells Massey to step out of the car.  She complies.  He tells her to move back towards his police car, which she does.  He directs her to stand behind his police cruiser, placing the cruiser between Massey and her van and children.  Officer Ianson again asks Massey where she's coming from.  Massey responds that she was driving around and that she and her husband had "got into it."

{¶10}    After a few more questions, Officer Ianson asks Massey, "is there anything in the vehicle that we need to know about?"  Massey responds "no, nothing."  Officer Ianson then asks if he can search the vehicle and Massey responds, "go ahead."

{¶11}    Massey then returns to the vehicle with Officer Ianson, who instructs her to remove her children from the vehicle.  As Massey's children are leaving the van, Massey

---

2. There was no footage played at trial of the alleged traffic infraction.

grabs her purse. However, Officer Ianson then tells her, "you just leave your purse in there, Mai." She complies and puts the purse back in the vehicle.

{¶12} Officer Ianson then begins searching the vehicle, starting with the purse. He recovers a baggie in the purse containing suspected methamphetamine.

{¶13} On cross-examination, Officer Ianson admitted that he did not stop Massey because of his belief that she had an invalid license. Rather, he stated that he pulled her over because of her alleged traffic violation. On further cross-examination, Officer Ianson could not recall if there actually was a stop bar at the intersection where he observed Massey's alleged traffic violation, and he stated that there might have been a stop sign instead of a stop bar. Officer Ianson candidly conceded that when he told the other officer that he said he was "going to pull her out, see if she'll give me anything" he meant he wanted to get into the vehicle and check for narcotics. He further testified that he felt justified prolonging the traffic stop after determining that Massey was validly licensed because of his past knowledge that Massey purchased and used methamphetamine. Officer Ianson also admitted that he never issued a traffic citation to Massey for the alleged traffic violation.

### III. Trial Court's Decision Granting Motion to Suppress

{¶14} Following the suppression hearing, the trial court issued a decision and entry granting Massey's motion to suppress. The court found that Officer Ianson did not possess a lawful reason to stop Massey. The court noted Officer Ianson's uncertainty as to whether there was a "stop bar" at the intersection, the officer's failure to cite Massey for a traffic offense, and the officer's failure to even issue a warning to Massey for a traffic offense. The court further stated that even if it assumed there really was a stop bar at the intersection, the court "is not convinced observing a motorist have a 'slanted front end' of a vehicle over the 'stop bar' is a traffic offense." The court found that the "true basis" that Officer Ianson stopped Massey was because he wanted to talk to her and search her vehicle for narcotics,

not because of the alleged traffic offense. The court acknowledged that "pretextual stops are not illegal as long as there is at least some legal basis for the stop," but found that "the State has not demonstrated to this court's satisfaction a violation of law even occurred" that would have allowed Officer Ianson to stop Massey.

{¶15} The trial court went on to find that the continued detention of Massey was unlawful because Officer Ianson had no reason to suspect that Massey was involved in any criminal activity and explained that "the State offers this court **no facts** describing what the subject matter of the 'subsequent investigation' might be." The trial court further found that "Assuming Officer Ianson had a legal basis to stop [Massey] for a traffic violation for which she was never cited, his continued detention of [Massey] and her children for some undefined 'investigation' after ordering her to exit her vehicle violated defendant's constitutional rights." Finally, the court found that Massey did not provide voluntary consent which would permit the officers to search her purse.

{¶16} The state appealed the trial court's decision and entry granting Massey's motion to suppress. The state raised five assignments of error. We will analyze the last three of these assignments of error together.

### IV. Law and Analysis

{¶17} Assignment of Error No. 1:

{¶18} THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS BY FAILING TO APPLY THE APPLICABLE LEGAL STANDARD.

{¶19} The state contends that the trial court failed to apply the appropriate legal standard set forth by the Ohio Supreme Court in *State v. Robinette,* 80 Ohio St.3d 234 (1997), for reviewing the validity of the seizure of evidence resulting from an otherwise illegal detention and search. In *Robinette*, the Ohio Supreme Court held that voluntary consent, determined under the totality of the circumstances, may validate an otherwise

illegal detention and search. *Id.* at 241. The state argues that the trial court only considered whether the initial stop was valid, and then failed to consider whether Massey's consent to search was voluntarily provided. However, the trial court *did* address consent, in two ways. First, the trial court addressed the question of whether Massey consented to the search of her van. The trial court noted several arguments made by the state, including that "the State argues even if the stop and detention of defendant was improper, defendant voluntarily consented to the search of her vehicle waiving her Fourth Amendment rights." The court then responded to that argument by stating, "Each of these arguments falls short." Though the trial court did not provide detailed analysis regarding consent to search the vehicle, the trial court clearly addressed the issue and determined that Massey did not voluntarily consent.[3] Second, the trial court explicitly found that Massey did not provide voluntary consent for the officer to conduct a search of her purse. The trial court noted that the state had failed to address the issue of consent with respect to the purse, noted that Massey had tried to take the purse out of the van, noted that Officer Ianson had "ordered" her to leave the purse in the van, and found that "[t]he officer had no right to search the purse based upon the doctrine of consent."

{¶20} Because the trial court did in fact apply the legal standard set forth in *Robinette* when it analyzed whether Massey had consented to the searches of her van and her purse, we overrule the state's first assignment of error.

{¶21} Assignment of Error No. 2:

{¶22} THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS BY FAILING TO INCLUDE ALL OF THE RELEVANT FACTS IN ITS FINDINGS OF FACT.

{¶23} The state contends that the trial court erred by failing to consider relevant

---

3. The state had argued regarding consent to search the vehicle at both the suppression hearing and in its post-hearing brief, so the issues and arguments regarding consent were well known to the court.

facts in rendering its decision. The state alleges that the court failed to consider (1) Massey's allegedly conflicting stories, (2) the tenor of her conversation with Officer Ianson, (3) her behavior during the interaction, (4) her "confident consent" to the search of her vehicle, and (5) her "prior confession to law enforcement about methamphetamine."

{¶24} In support, the state cites *State v. Soto*, 9th Dist. Lorain No. 16CA011024, 2017-Ohio-4348. There, the Ninth District Court of Appeals stated that "a trial court's findings of fact are deemed incomplete when they fail to include pertinent facts that were presented during the hearing and which are necessary to conduct the legal analysis." *Id.* at ¶ 10, citing *State v. Trivett*, 9th Dist. Medina No. 15CA0041-M, 2016-Ohio-8204. In *Trivett*, the Ninth District reversed because the trial court failed to make factual findings related to its determination that the defendant was not "in custody" and not entitled to *Miranda* warnings. *Trivett* at ¶ 7-8.

{¶25} Initially, the state does not specify the issues to which it claims the omitted factual matters relate. Presumably, the facts relate to the reasonableness of Officer Ianson's suspicion of criminal activity, or to the voluntariness of Massey's consent. Regardless, we find the state's argument here meritless.

{¶26} The trial court's decision addressed all facts presented at the suppression hearing that were "necessary to conduct the legal analysis" relevant to the motion to suppress. *Soto* at ¶ 10. All but one of the purportedly ignored facts highlighted by the state appear to be mere characterizations of evidence. For instance, the state argues that the trial court ignored the fact that Massey presented conflicting stories. However, Massey's statements about where she was coming from or where she was going were not conflicting but were elaborations based on Officer Ianson repeatedly asking her the same question. Likewise, the tenor of Massey's communications with Officer Ianson and her behavior during their interaction were open to interpretation and the trial court did not need to discuss

Massey's tenor or behavior in order to analyze the issues before it. The state's characterization of Massey as having given her "confident consent" to the search of her vehicle is likewise a characterization, and the trial court did not need to analyze whether she gave her consent "confidently" when the totality of the circumstances shows that Massey did not voluntarily consent.

{¶27} Officer Ianson's testimony that Massey told him she purchases and uses methamphetamine was the only pure factual issue—rather than a characterization of evidence—which the state complains the trial court omitted from its decision. But the mere fact that Officer Ianson was aware that Massey used methamphetamine would not have required the trial court to deny the motion to suppress, and this fact was therefore unnecessary to the trial court's analysis.

{¶28} The trial court's decision thoroughly discussed the facts relevant to deciding the motion to suppress. The trial court did not err in omitting facts. We overrule the state's second assignment of error.

{¶29} Assignment of Error No. 3:

{¶30} THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS BECAUSE THE OFFICER LAWFULLY DETAINED MS. MASSEY AND CONSENT WAS VOLUNTARY.

{¶31} Assignment of Error No. 4:

{¶32} THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS BECAUSE MS. MASSEY CONSENTED TO THE SEARCH OF HER VEHICLE EVEN IF SHE WAS UNLAWFULLY DETAINED.

{¶33} Assignment of Error No. 5:

{¶34} THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS BECAUSE MS. MASSEY'S CONSENT INCLUDED THE SEARCH OF HER PURSE.

{¶35} The state argues that Officer Ianson had probable cause to stop Massey because he observed her commit a traffic infraction and because he had previous knowledge that Massey did not possess a valid driver's license. The state further argues that Officer Ianson had probable cause to prolong the traffic stop because he had a reasonable articulable suspicion of criminal activity. Finally, the state argues that Massey voluntary consented to the search of her vehicle and to the search of her purse. We will address these arguments in turn.

### A. Appellate Review of Decision Granting Motion to Suppress

{¶36} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. An appellate court must defer to the trial court's factual findings if they are supported by competent, credible evidence. *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018-Ohio-201, ¶ 14. However, an appellate court independently determines, without deference to the trial court's decision, whether the facts satisfy the applicable legal standard. *State v. Cummins*, 12th Dist. Clermont No. CA2018-07-051, 2019-Ohio-1496, ¶ 22.

### B. Traffic Stop

{¶37} "A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment and must comply with the Fourth Amendment's general reasonableness requirement." *State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 18, citing *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769 (1996). One type of lawful traffic stop is an investigatory stop, also known as a *Terry* stop, which requires the law enforcement officer to possess a reasonable suspicion based on specific and articulable facts that criminal behavior has occurred or is imminent. *State v. Moeller*, 12th Dist. Butler No. CA99-07-128, 2000 WL 1577287, *2 (Oct. 23, 2000); *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968). Another type of permissible traffic stop is where a police officer has

probable cause to stop a vehicle because the officer observed a traffic violation. *State v. Bullock*, 12th Dist. Clinton No. CA2016-07-018, 2017-Ohio-497, ¶ 6.

{¶38} The state argues that Officer Ianson had a reasonable articulable suspicion to stop Massey based upon his belief that she lacked a valid license. However, the state's argument fails because Officer Ianson admitted at the suppression hearing that he did *not* stop Massey because he believed that she lacked a valid license.[4] Even if the officer had not made this admission, the trial court found that there was nothing submitted into evidence indicating how stale the officer's knowledge regarding the status of Massey's license might have been. And Officer Ianson did not call in to dispatch or run Massey's plates to verify his belief that she lacked a driver's license before pulling her over. Accordingly, the record does not support the argument that Officer Ianson had probable cause to stop Massey based on knowledge regarding Massey's lack of a valid license.

{¶39} The state argues that Officer Ianson also possessed probable cause to stop Massey because he observed her commit a traffic violation. The trial court made the factual finding that "It is clear to this court the true basis for the stop of the Massey vehicle was to stop her vehicle to talk to her and then to search her vehicle to see if she might produce something that might support an arrest," *not* the alleged traffic violation. The trial court acknowledged that "pretextual stops are not illegal as long as there is at least some legal basis for the stop." Indeed, we have repeatedly held that "even a de minimis traffic violation provides probable cause for a traffic stop." *State v. Fisk*, 12th Dist. Preble No. CA2020-11-016, 2021-Ohio-2989, ¶ 25; *State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 19; *State v. Williams*, 12th Dist. Clinton No. CA2009-08-014, 2010-Ohio-1523,

---

4. When the officer was asked at the suppression hearing if the "real reason" he stopped Massey was his belief that she lacked a valid license, the officer answered "No, ma'am." The assistant prosecutor then asked, "What was the reason you stopped her?" The officer responded, "It was for the stop bar violation."

¶ 13.  Moreover, the Ohio Supreme Court has explained that where an officer has probable cause to stop a motorist for any criminal violation, including a minor traffic offense, "the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity."  *Dayton v. Erickson*, 76 Ohio St. 3d 3 (1996), syllabus.  *Accord State v. Leder*, 12th Dist. Clermont No. CA2018-10-072, 2019-Ohio-2866, ¶ 30; *State v. Robinson*, 12th Dist. Madison No. CA2019-04-009, 2019-Ohio-5370, ¶ 28-29.

{¶40}  But this case is different.  Unlike in *Erickson*, *Leder*, and *Robinson*, the trial court did *not* find that the pretextual stop was lawful based on Officer Ianson's observation of Massey engaging in a traffic violation.  Instead, the trial court concluded that the state "failed to demonstrate" that the traffic violation even occurred.  In other words, the trial court concluded that, as a factual matter, the officer did not observe a traffic violation at all, so he did not, as a legal matter, have probable cause to stop Massey.

{¶41}  There was no video evidence of the alleged traffic infraction.  On the body camera footage, Officer Ianson initially told Massey that he stopped her because she did not have a driver's license—a rationale for the stop that he denied at the suppression hearing.  When Massey informed him that she now had a valid license, the officer then informed her that she had pulled past a stop bar.  Massey appeared startled by this accusation and quickly denied it.  In fact, the officer never cited Massey for a traffic violation, and he failed even to issue a warning to Massey.  The officer conceded during the suppression hearing that he could not even recall if there was a stop bar at the intersection.  Therefore, competent, credible evidence supported the trial court's factual finding that the traffic violation did not occur.  *Banks-Harvey*, 2018-Ohio-201 at ¶ 14 (when reviewing a trial court's decision granting a motion to suppress a court of appeals must defer to the trial

court's factual findings if they are supported by competent, credible evidence).

{¶42} Having determined that competent, credible evidence supported the trial court's factual finding that the officer did not in fact stop Massey because of an alleged traffic violation, the trial court correctly found that the state failed to establish that the officer had probable cause to stop Massey's vehicle.

### C. Prolonged Detention

{¶43} The state argues that Officer Ianson had probable cause to prolong the traffic stop because Massey's behavior during the stop was suspicious and gave the officer a reasonable articulable suspicion that Massey was engaged in criminal activity.

{¶44} In *Robinette*, the Ohio Supreme Court held that

> When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.

*Robinette*, 80 Ohio St.3d at paragraph one of the syllabus. Thus, where an officer detains an individual for a traffic infraction, and, during this initial detention, the officer observes "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." *Id.* at 241. However, where there are no articulable facts that give rise to a suspicion of illegal activity, the continued detention after the purpose for the original stop has ended constitutes an illegal seizure. *Id.* at 240. "To possess a reasonable articulable suspicion of criminal activity, a 'police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' a search and seizure." *State v. Sexton,* 12th Dist. Butler No. CA2019-08-133, 2020-Ohio-4179, ¶ 29.

{¶45} The state's argument regarding prolonged detention assumes that the traffic stop of Massey was lawful. In the previous section of this opinion, we found that the trial court did not err when it found that the traffic stop was not lawful. But even if the traffic stop was lawful, the trial court did not err in finding that the state failed to show that Officer Ianson had a reasonable, articulable suspicion of criminal activity necessary to justify detaining Massey for further investigation. The state argues that it met this burden because Massey "gave [the officer] three different stories within a two-minute period regarding her activities," and because Massey had previously told the officer that she purchased and used methamphetamine. (Emphasis omitted.) The state described Massey's three stories as being (1) that she was going to her house, (2) that she was "just driving around," and (3) that she was taking her kids to get dinner. However, Massey did not tell three different stories. Instead, the officer asked Massey about what she was doing multiple times, and Massey provided more detail each time. The "three stories" were in fact the same story, with different degrees of elaboration and detail. There was nothing about Massey's explanations of what she was doing that would have given rise to suspicion of criminal activity. And the officer's knowledge that Massey had purchased and used methamphetamine in the past was not, by itself, a basis for a prolonged detention. The trial court did not err in determining that the officer lacked reasonable, articulable suspicion of criminal activity to justify Massey's prolonged detention. Accordingly, the state's third assignment of error is overruled.

### D. Consent to Search of Vehicle

{¶46} The state argues that even if the initial stop and detention were unlawful, the trial court should have denied the motion to suppress because Massey provided Officer Ianson with voluntary consent to search her vehicle.

{¶47} As stated previously, "voluntary consent * * * may validate an otherwise illegal

detention and search." *Robinette*, 80 Ohio St.3d at 241. "Voluntariness is a question of fact to be determined from all the circumstances." *Id.* at 243. Once an individual has been unlawfully detained by law enforcement, for his or her consent to be considered an independent act of free will, the totality of the circumstances must clearly demonstrate that a reasonable person would believe that he or she had the freedom to refuse to answer further questions and could in fact leave. *Id.* at 245.

{¶48} Upon a review of the record, competent and credible evidence supports the conclusion that Massey did not voluntarily consent to the search of her vehicle. Massey was stopped by police with her children in the vehicle. After Officer Ianson verified that her driver's license was valid, he ordered Massey leave her vehicle (with her children still inside), and to stand behind the officer's police car. She complied with the order. There were at least two and possibly more officers on scene. Officer Ianson then repeatedly questioned Massey about her whereabouts and what her intentions were. Officer Ianson did not return Massey's driver's license.[5] While still requiring Massey to stand behind his cruiser, separated from her vehicle and children, the officer asked for her consent to search her vehicle and she responded, "go ahead." By Officer Ianson's own admission at the suppression hearing, Massey was not free to leave at the time he was questioning her and she was not free to leave when he requested her consent to search her vehicle. A reasonable person would not believe that they were free to leave in these circumstances, so Massey's consent was not voluntary. *Robinette*, 80 Ohio St. 3d at 245.

{¶49} While Officer Ianson's questioning was not expressly coercive, the circumstances surrounding the request to search made the questioning impliedly coercive. Thus, the circumstances suggest that Massey merely submitted to a claim of lawful authority

---

[5] Officer Ianson only returned Massey's driver's license to her after he completed the search of her vehicle.

rather than consenting as a voluntary act of free will. *Id.* We therefore overrule the state's fourth assignment of error.

### E. Consent to Search of Purse

{¶50} The state argues that Massey's consent to search her vehicle extended to closed items inside her vehicle, such as the purse. However, given our conclusion that Massey did not voluntarily consent to the search of her vehicle, Massey's fifth assignment of error is moot and need not be addressed. App.R. 12(A)(1)(c).

{¶51} For these reasons the trial court did not err in concluding that Massey did not consent to the search of her purse.

### V. Conclusion

{¶52} We recognize that Officer Ianson was attempting to locate illegal drugs during his interaction with Massey. But good intentions do not relieve the police of the obligation to comply with the Fourth Amendment and other constitutional rights. As the Ohio Supreme Court explained in *Robinette*:

> We are very mindful that police officers face the enormous and difficult task of fighting crime. Furthermore, we explicitly continue to recognize that officers may conduct checkpoint-type questioning and consensual searches, and may progress to further detention and investigation when individualized suspicion of criminal activity arises during questioning based on reasonably articulable facts. But allowing police officers to do their jobs must be balanced against an individual's right to be free from unreasonable searches. At some point, individual rights must prevail. This is just such a case.

*Robinette*, 80 Ohio St. 3d at 245. So too here.

{¶53} For the foregoing reasons we overrule all five of the state's assignments of error and affirm the trial court's decision and entry granting Massey's motion to suppress.

{¶54} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.